The case this morning is Louder v. Department of Human Services. Good morning, Your Honor. The court below made two mistakes. They ignored the intent of Congress in selecting the statutory scheme that they would apply for a law enforcement officer to the SSUD. And then, even using the scheme that they'd find, they ignored all of the relevant factors and all of the relevant... When you say they ignored, what you mean is they didn't discuss. That's correct. And you said, I know, in the police judicial case, cases involving district court opinions, the fact that the court has not discussed a particular issue doesn't necessarily mean they didn't consider it. That's true, Your Honor. But in this situation, I don't think that by merely admitting the evidence or listening to the petitioner, Mr. Louder, that that constitutes discussion. And if we look at the... But what makes you think... What makes you think they have to say that they didn't consider the evidence? I gather the only argument is, well, they didn't discuss it in the opinion. They didn't discuss it. If they hadn't discussed anything, we might draw some conclusions that they had actually considered everything. But if you look at their eight-page opinion, they did discuss. They had one paragraph of discussion. They have a six-page report. Then they have a page-and-a-half discussion about GS-083s, which, if you look at page A037 in the appendix, when OPM goes up to Congress, what they said was, law enforcement officer retirement coverage does not depend on classification of a position within an occupational series, e.g., police officer GS-083s. So they're telling Congress, we're not going to make this entirely dependent on the fact that they're classified as 083s. What we're going to do is we're going to actually look at the opinion. But what actually... I can't tell from the briefs exactly. What did he do when he was a member of the armed forces? I gather what he did basically was protect the president and the vice president and their families. Is that correct? Well, what he did was Mr. Lauderdale was a Marine in Vietnam, and when he finished his tour of duty over there... It doesn't matter whether he was in the Marines or not. I understand that, Your Honor. When he finished his tour over there, he went to the Secret Service, the uniformed division of the Secret Service. And at that time, the Secret Service, the uniformed division, had a maximum minimum age, which is one of the factors... I don't want to know what the qualifications were. What did he actually do? Was he going out investigating crime? He was not one of the agents, like one of the... He was basically doing police work, wasn't he? He was doing police work. But is that enough to constitute law enforcement status? I thought the statute expressly exempts from the coverage of law enforcement activity someone who really is protecting life and property. That's right, but when Congress looked at this... What more was he doing? He was in the unique position that the SSUD was created, and originally they were given the same powers and essentially considered the same as the D.C. police, the law enforcement of the D.C. police, and that's why they were put in that statutory retirement scheme. But was every member of the D.C. police a law enforcement officer? The man who was directing traffic out on the street, he's not a law enforcement officer. Certainly not under the statute, because the D.C. police have a separate retirement... That's what we're concerned about, is the statute. But I have one more concern I have, which I think Judge Freeman raised, and I didn't hear you respond, which is what did he do other than protect life and property? Because that is exempted under the statute from definition. So what were his actual duties that he did that above and beyond that would qualify him? The same duties, I think, that one would see in the Secret Service Uniformed Division, even now when you walk by the White House, which is they do protect the White House, but they are making arrests when there were war protests. And this is in the record. When there were war protests, there were some days when he would spend the entire day, presumably in Lafayette Park or wherever the protesters were, arresting people and putting them in the paddy wagons. Okay, but you know what? The lower board found that it was less than 50 percent of the time, and that's the way we've interpreted it. Isn't that a fact-finding, how much of his day or how much of his week was spent doing those things? And if it's a fact-finding, what's our standard of review? I don't know where they found that that constituted less than 50 percent of his day. What they said on page 808 in the record is this is a statement regarding his arrest, is that the appellant further testified that these duties might occasionally involve making arrests, spending an entire day loading protesters into a paddy wagon. At other times, he would perform them for weeks without making a single arrest. And that statement regarding arrests just makes no sense, because if the definition of a law enforcement officer is making arrests on a daily basis, then either one, there's going to be no law enforcement officers, or a lot of people are going to get arrested that don't get arrested now. So am I supposed to interpret, this is what, look, I wish the board had written a much lengthier opinion and discussed all the facts and explained it in greater detail, but this is what we have to work with, and I do have to give deference to what I perceive to be their fact findings. And so to the extent that they're saying he only occasionally did this, don't you think that that's a statement that it's less than 50 percent of his time was spent doing this, to say it was occasional? It is, but I don't think that the 50 percent standard applies to, you have to be making arrests on 50 percent of your days. I mean, I haven't seen anything that indicates that that's the standard. And there's such a variety of things that they didn't consider, or at least, I will admit, that they didn't put in their decision. You mean things like carrying a gun? Carrying a gun. But the most- Hyper-hazardousness. Yes. This is the kind of stuff that you're talking about. That's the most important thing. Both Luke and Watson emphasize that this whole scheme of giving enhanced benefits to certain law enforcement officers had to do with the rigorousness of their duty and how vigorous they were, whether there was a maximum entry age, which there was at this time. It was 29. And their opinion discusses none of that. Those are the key factors. I mean, Watson and Luke both call those out as the key factors for why these people should be getting benefits. And I don't think that one can say they fairly considered the pertinent factors if the sum total of the analysis is one paragraph with two sentences. One sentence is a non-sequitur about how he didn't arrest people apparently on a daily basis. I mean, it's not the length of the discussion, although I really would have liked more. I mean, suppose they had one sentence that said we've considered all of the factors and we find he spent less than 50 percent of his day doing the kinds of activities that are specified and required by the statute and precedent. And then they cite some cases. I mean, that's one sentence. That would be a sufficient fact-finding, wouldn't it? Even though it's not lengthy and detailed? No, I think the board is obligated to give this court something to review. I mean, otherwise you're placing the decision. There is no meaningful review if that's all they have to put in there. If they only have to say— Why do you say there's no meaning? I don't understand. How much more do they have to say? They have to discuss every point? They have to discuss at length the significance of this carrying a gun? I think a good exemplar is Deaderline, which is put in the back of our appendix in our good brief, where the judge actually did review the various factors. And after that review, it was the course of that review that caused the MSPB judge in that situation to conclude that this in fact was law enforcement officer. That is a perfect exemplar of what provides this court, if necessary, the ability to review the decision below. I don't think it's sufficient fact-finding to say, I find as a fact that he didn't meet the statute, which is essentially what Your Honor is postulating there. And if that's the standard, then this court will never overturn any decision by the MSPB, because all they have to do is admit everything into record, which is what the government does. And it's interesting. You look at the government brief. When they're talking about, they say, oh, the court considered all this stuff. Well, the citations, and this is on page 30 to 32 of their brief, the citations in their brief aren't to the opinion. The citations are to the hearing transcript. But you're not asking us to send the case back for the administrative judge to write a more detailed opinion. You're asking us to hold that he was entitled to law enforcement status during this period, are you? I would certainly like the latter. That's part of your conclusion. I agree. I certainly would like the latter, and that goes to the fact that I think they used the wrong definition of law enforcement officer, and they should have used what Congress said when Congress came in and changed the old statute. When they said the wrong definition, you mean they should have used the later definition? They should have used the first definition. Well, I don't see how that definition helps you, because what that definition addresses is that you're a law enforcement officer if the reason you no longer have status is because of the enactment of that statute. But the reason he wasn't lost, if he lost his law enforcement status, was not the statute passed 10 years later, but the fact that he transferred away from a position that was covered by the D.C. statute under the Civil Service Commission. That's correct. This falls into a gap. There's no doubt that this falls into a gap and that Congress didn't specifically consider this situation. That new provision that you referred to was enacted 10 years later, wasn't it? It was enacted. There was a portion of it that I believe was enacted in 86, and then after 86, OPM apparently wasn't including SSUD in the definition of law enforcement officer. Congress came back, rebuked them, and said include it. Is there any indication in the face of the statute or otherwise that Congress intended this new definition, this automatic definition, to be retroactive? Normally statutes are deemed to be prospective only. Well, I believe in this situation where they were pulling in, and I don't know specifically about the retroactivity, but in this situation where they were converting SSUD from the D.C. Fire and Police situation into FERS and creating the whole FERS situation, I don't know that they explicitly intended to include retroactivity, but there was no doubt that the FERS and the former, the D.C. Fire and Police and the CSRS were all intended to give advanced benefits to the exact same category of people, those people that have this physical rigor and vigorousness in their duties, and that you want to try to incentivize to be in these positions. That's the whole purpose for this. I would like to say something, but I just wanted to list the number of things that they didn't consider. They didn't consider physical rigor. They didn't consider virtually any of the benefit factors, none about the status of SSUD D.C. police officer, no word of the maximum entry age, not a single word of the fact that SSUD had physical training requirements, given time off, not a single word about the top-secret clearance that these people had, not a single word about their carrying a gun and one of the first people to carry hollow-point bullets and indicia of the danger that they faced on a daily basis, not a single word about Congress rebuking them with the passage of FERS on the definition of LEO, not a single word about all the factors discussed in Floyd, where SSUD is subject to special drug tests that apparently are not law enforcement officers, and finally, not a single word about the fact that they previously gave him this status and then they took it away. Yes, sir? Thank you. May it please the court. At the heart of this case, it is a case where the court should be looking for substantial evidence to support the administrative judge's decision, and that is a deferential standard. Now, to be a primary LEO, everybody agrees he's got the secondary status, but the question is, the primary had to be in FERS, right? The only reason he wasn't in FERS is because he transferred out before the statute. I don't think that's necessarily supported by the record. He transferred over to the academy before the... The appellant is... The petitioner is saying that he wants to use the FERS definition. As we pointed out, he never has been part of the FERS retirement program. Of course not. If he had remained in his position, he would have been covered by FERS and fallen squarely within that statutory provision. That is correct, under FERS. So it's just kind of a question of timing, that he doesn't have that primary qualification as a LEO. No, it's an issue that he's not under FERS, and that was Congress's... He did pay extra under the D.C. retirement plan, just like FERS, right? He did contribute extra into the retirement fund, expecting to receive the enhanced retirement benefits. During that time, when he transferred 16 years before, or 8 or 10 years before FERS, he went into CSRS. FERS didn't exist when he transferred to the other agency. So he was a CSRS employee, transferred to the other agency, stayed in CSRS, got CSRS retirement benefits, and if he was a primary LEO during his Secret Service police stint, then he would be eligible to the retirement benefits. One thing that confused me is there were two other individuals that were similarly situated. My understanding is they both took up the early retirement a little earlier than he did, and both of them got the enhanced benefits, right? Well, they say that in their brief. I actually don't have any information about their status. So it's pure conjecture, I think, as to what their status is and what has occurred with them subsequently. But I did mention that if it was improper, then the government would have a basis for going back and correcting those gentlemen as well, if that were the case. And, of course, those gentlemen are not before us in this case, and so I did not address that issue. But if their decision was based on the same reasoning, it would still be wrong. It's pretty clear that this Section B that sets up this special definition of a law enforcement officer as one who occupied a position under FERS, it's pretty clear that they're intending to cover people who had been in the D.C. employment processes and things of that nature, as he was. Well, two things. Anybody who, at the time of that statute, anybody who was in the U.S. Secret Service, it took a couple of statutes, but in time, anybody who was in the Secret Service at that time would be transferred into FERS, and they would be getting the same type of benefits. That's true. Another instance is that if you read the statute, it says after, I believe the date is 1984, 1986, but after this date, all U.S. Secret Service will be under FERS. Now, CSRS is widely recognized as a superior type of benefit to FERS, and Congress is allowed to differentiate, starting with FERS, who's in FERS and what their benefits will be, but nothing about that FERS statute. It's not a question of retroactivity, because the statute is only designed to affect FERS, and there's a separate statutory scheme for CSRS. But I do want to go back to this. I'm not agreeing with you, but what Congress seems to be addressing is the situation of people who were under the D.C. statute, and then as a result of the new statute, found themselves taken out of that and put in under the Civil Service Commission, which may have resulted in a loss of retirement. That's what Congress was dealing with, not covering the case of someone who, on his own, decided to leave the D.C. system. That's right, and it has nothing to do with Mr. Lowder, because Mr. Lowder had already left the system many years before. I do want to address the Court's question about what Mr. Lowder did. There wasn't that much evidence, but he did, I think, and much of the transcript is his testimony, where he was allowed, as I'm trying to say, to present his own testimony and to question the witnesses who were present. What he says was, this is during an eight-year period, I was at one time assigned to the White House. My primary duty was protecting the president of the United States, his family, and the grants. I'm at page 19 of the supplemental appendix in my brief. When I was transferred, when I was at the Foreign Missions Division, my primary duty was walking on foot patrol or driving a scout car and enforcing laws in Washington, D.C. I think you can make a good case that there's substantial evidence there, but I'm still wondering why we don't classify him as having been in FERS, because he would have been in FERS had he remained in his position without going to the Academy. I think the simple answer is because he's not. I'm not positive on this point, about what his options were on opting into FERS, but he's not in FERS, and I imagine it's... Hickory's Secret Service officer was transferred from the D.C. firefighter system into FERS, right? After, yes, well after Mr. Robert Hedlund. Well, after he had gone to the Academy, correct, correct. And so this is just an issue that maybe as a policy matter doesn't sit well, Congress should correct it if that's the case, but it is a matter for Congress to address. Congress isn't going to pass a law for one person or two or three. Well, if it wasn't envisioned at the time, then they could always go back and address it, but they were aware, Congress was aware at the time that the reason for creating the exception in the FERS statute was because the U.S. Secret Service police were considered more like police officers, and it did not meet the common law or statutory definition of law enforcement officers. So in other words, those Secret Service officers were law enforcement officers, and they wanted to make sure they were covered by the law enforcement officer provision. That's an alternative argument. Why don't we then see him as having primary coverage because the law enforcement officers are necessary for these retirement benefits? Well, if I said that, Your Honor, I just spoke because I was not making that point. No, no, I'm putting some words in your mouth. I'm not suggesting you made a mistake. Because I'm saying that he does not meet the definition, and that's what OPM's position is as well. Counsel, Congress created this new definition in FERS. They could have put it in the CSRS, too, right? I mean, they could have if they were intending to have it applied and people were covered by the CSRS. They could have inserted that in Roman numeral 2, which included the protection of officials of the United States against threats to personal safety. I assume so, but in fairness, and I'm sure my colleague here will address it, is that I don't think that there were CSRS secret service, uniform secret service at the time. And so it didn't... And that's one reason maybe why it doesn't... Congress didn't address it, is because there were no primary, active, uniform secret service at the time to be covered by CSRS. The D.C. statute does not have any law enforcement officer category, does it? No, I don't think it does. And I certainly didn't address it... But it has higher benefits than most. Yes. There's no specific additional benefits under that statute because you've been classified as a law enforcement officer. That's correct, and I think you can draw a contrary conclusion by the fact that when Congress was passing the FERS statute, OPM chimed in and the legislators had to know in the amendment, in the House report, that the reason they were providing this exception in B is because it was OPM's position that they were not law enforcement officers. Now, when he left the secret service, didn't he elect to stop receiving the D.C. benefits and elect to receive the CSRS benefits? I don't know if that's the case. I'd be surprised if that were the case. I'm not sure he was... Or that it would make any sense at all because once he went to the training center, I don't think the D.C. benefits were available. It probably just made perfect sense to be in the CSRS program, but I actually don't know the details on that. I wouldn't attribute that kind of intentional judgment on his part to leave the benefits. But what is clear is that he was part of the CSRS benefits. Now what he's trying to do is latch on to a more favorable definition that Congress has created after the fact to cover FERS, which is not the kind of entitlements that you get under CSRS. And as this court is aware, we have to construe these type of retirements very strictly. And those words would have no meaning if we didn't construe Congress's statutory esteem strictly here. Going back, I did want to make the point that the record does contain substantial evidence. The administrative judge made it clear that he was considering Mr. Lowder's testimony when he did recite the facts. In his testimony, did he recite all the information that counsel presented to us about the hollow point bullets in the gun and the top secret clearance and the entry age and all those sorts of things? Was all of that in the record evidence? Several of those are. I don't recall every single one of them, but yes. And so there was no mention. They weren't introduced through his testimony. They were introduced in some other fashion. His age, the maximum minimum age requirement and maximum retirement age was discussed in the testimony. The physicalness was discussed. However, I would say it doesn't support Melio finding. What he said was he was allowed three hours a week to exercise. And he said you could exercise. And I think it's important, I think the court knows, is that to the extent that there's nothing, it's included in the OPM guide to police series, which is not an OLEO benefit. And what the judge relied on and said was Mr. Lowder's service was consistent with the information that was in the OPM guide for police officers. And it notes that there are some preliminary investigations. It notes that you may sometimes do police work, but if it's not a primary duty, then it doesn't qualify you as an OLEO. Does everyone know what yours is? One other thing is that my colleague here said that the minimum maximum age were the key factors in whether you're considered an OLEO, and that's not the case. The key factors are whether your primary duties are the investigation, apprehension, and detention of people who are suspected or convicted of federal crimes. Another thing that Mr. Lowder testified to that you did, when he was asked if you'd done any investigations, he said yes, he had done any sexual harassment investigations. And of course, he later admitted that was not a criminal investigation, but he didn't have any other examples of long-term investigations. And so even though there's some evidence that he may have at times done some OLEO-type work, the statute already considers that and says that neither police work will be covered as an OLEO, and neither will some emergency or intermittent type of OLEO work fall high. Thank you very much. Thank you, sir. Yes, Mr. Bryant. You have about two minutes remaining. I just want to try and answer a couple questions you raised. There are people that did retire and are continuing to receive these benefits. If you look at page 34 of the government's brief, they drop footnotes saying they don't deny that there are people in these situations. What happened with Mr. Lowder? They awarded him these benefits. He was getting ready to retire. 9-11 happened. They set up a separate counterterrorism division at FLECT, and he stayed on to do that. And then it was after that when they withdrew the benefits without telling him why. And that's why, even if this court can affirm under this cursory fact-finding, if you can call it that there, they shouldn't. Because they gave him these benefits, and they took them back. He should be entitled to at least an explanation why it was given, why they were taken back, and the full factor analysis. There was no reason you asked about amending CSRS. There was no reason, as Mr. Kessler said, to amend CSRS because these SSG would never fell into it. They were part of the DC system, and then after they got taken out of the DC system, they got put directly into FERS. So there was no reason for Congress to think about amending CSRS. This was simply this transition where you could go from primary to secondary was something that Congress simply overlooked. But if the basic position that Congress in its statute shouldn't address this somewhat unusual situation, but that if Congress had addressed it, it would have wanted him to get those back. They expressed their intent extremely clearly in that section of legislative history where they identified that opium wasn't giving them the benefits under these, and that we are changing the law to put them in there specifically to ensure that they do get these benefits. In terms of his election to CSRS, he did not intentionally, he didn't have a choice to be under the DC FERS system. He had to be there 10 years. He was only there eight, so he went into CSRS, so he basically had no choice in that matter. And finally, the factors that I listed, I got the majority of them from their brief. I think I got all the rest of them except for the legal factors about them ignoring his. We get the factors from their brief, which come from our cases, but were they in the evidence of record below? Yes, and when I say from their brief, I mean pages 30 to 32 where the government summarized the record, but it was in his testimony below. Thank you.